IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–01468–MSK–KMT

RANDALL S. ASHER, D.D.S, M.S.,

     Plaintiff,

v.

COLGATE-PALMOLIVE COMPANY, a Delaware corporation,

     Defendant.

---

**ORDER**

---

     This matter is before the court on "Plaintiff's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37." [Doc. No. 75, filed October 26, 2011] ("Mot.").  Defendant responded on November 16, 2011 [Doc. No. 84] and Plaintiff filed a Reply on December 1, 2011 [Doc. No. 92].  The court heard oral argument on this and one other motion on December 14, 2011.  (*See* Minutes [Doc. No. 97].)  As a result of certain factual assertions made at the hearing, the court allowed Defendant an opportunity to rebut Plaintiff's allegations that Interrogatory No. 8, the response to which is the genesis of Plaintiff's request for sanctions, had not been formally amended.  Defendant filed its "Supplemental Response to Asher's Motion for Sanctions [Filed under Seal]," attaching four exhibits and limited further argument, on December 15, 2011 [Doc. No. 95] ("Supp.Resp.").  Because Defendant's filing contained more information than was initially contemplated by the court, the court afforded Plaintiff the opportunity to file a rebuttal to Defendant's Supplemental Response.  Plaintiff filed his "Supplemental Reply in Support of

Plaintiff's Motion for Sanctions Pursuant to Federal Rule Of Civil Procedure 37 (Filed under Seal)" on December 19, 2011.  [Doc. No. 99.]

This case involves Plaintiff Dr. Asher's contention that a "polishing pad" on Colgate's Max White toothbrush violates his patent by inclusion of abrasive materials in the added member(s).  (Mot. at 2.)  Therefore, the abrasiveness, or non-abrasiveness, of that certain member of the accused toothbrush is critical to the case for both parties.

On January 26, 2011, Plaintiff served his First Set of Interrogatories, including Interrogatory No. 8, requesting

> Identify all tests you have conducted, or tests conducted on your behalf, on the Max White toothbrush and/or its polishing members, including but not limited to, hardness tests, tests on the chemical properties, abrasivity and weight loss, identifying the name of the individual(s) and/or businesses conducting the tests and the results of each such test.

(Mot. at 3, Ex. B, Defendant's Responses to Plaintiff's First Set of Interrogatories (Nos. 1-18).) Plaintiff also included concurrent requests for production of documents concerning testing of the accused product and its component parts.  (*Id.*)  Defendant responded on March 25, 2011 as follows

> Colgate specifically objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks information that is not relevant to any claim or defense in this matter. Colgate further specifically objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as it calls for identification of "all" tests.

> Subject to Colgate's General and Specific Objections, *Colgate states that it is not currently aware of any tests that it conducted or conducted on its behalf related to the Max White toothbrush's abrasivity*. Colgate further states that it conducted or caused to be conducted two tests on the MaxWhite toothbrush:

MaxWhite vs Oral-B Indicator In-vitro IAE and MaxWhite vs Oral-B Indicator
In-vitro Stain Removal.

(Mot. at 4, Ex. B) (emphasis added). At the hearing it was revealed that Plaintiff had been

provided with data from the two prior tests listed in the response above, which were conducted

pre-litigation. Plaintiff asserts that, almost five months after Defendant's response to

Interrogatory No. 8, he learned that certain abrasivity tests were conducted by Dr. Mark Putt, an

individual specially retained by Defendant in or about September 2010.[1] (*Id.*) Plaintiff

contends, without contest, that Dr. Putt's testing and his final report regarding the testing

together with his opinions derived from the testing were put in final form and provided to

Defendant Colgate on or about March 15, 2011. (*Id.*)

Again it is not seriously contested that the italicized portion of Defendant's above

response to Interrogatory No. 8 was incorrect in light of Dr. Putt's testing and report which had

been completed 10 days prior. The question before the court is whether this portion of

Defendant's response constitutes a deliberate lie - including whether there was any nefarious

purpose for the lie - or whether the inaccurate answer constitutes slipshod drafting by

Defendant's attorney and a failure to specifically raise a legitimate privilege objection.

### ANALYSIS

Plaintiff requests that the court consider Defendant's failure to produce Dr. Putt's report

in March 2011, or at least to indicate its existence on a privilege log, to be evidence of a willful

intent to deceive and mislead Plaintiff prior to and during the deposition phase of discovery. As

---

[1] There is appears to be no disagreement that Dr. Putt was retained subsequent to the
filing of this case on July 22, 2010.

a sanction, Plaintiff requests that Defendant's affirmative defense of non-infringement be dismissed.

Pursuant to Fed. R. Civ. P. 26(a)(2), "a party shall disclose to other parties the identity of any person who may be used at trial to present . . . [expert testimony, and the disclosure must] be accompanied by a written report prepared and signed by the witness[,] . . . contain[ing] a complete statement of all opinions to be expressed and the basis and reasons therefor."  Fed. R. Civ. P. 26(a)(2).  Supplemental disclosures may be required if the disclosing party "learns that in some material respect the disclosure or response is incomplete or incorrect."  *Id.*

Fed. R. Civ. P.37(c) provides

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

> 1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-America Tablewares, Inc. v. Mogi*

*Trading Co.*, 100 F.3d 1353, 1363 (7th Cir.1996).)  A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.  *Id.; United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir.1998).  Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.  *Id.*  "The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1) ."  *E.E.O.C. v. Outback Steak House of Florida, Inc.,* 2008 WL 3992172, *6 (D. Colo. 2008); *Sender v. Mann*, 225 F.R.D. 645, 655-56 (D. Colo. 2004) (*citing Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan.1995).)

Defendant maintains that the Dr. Putt's report was, in March 2011, a report prepared in anticipation of litigation by a then non-testifying expert and was therefore protected from disclosure by work product privilege.  (Resp. at 3.)  Therefore, Defendant maintains that its incorrect response to Interrogatory No. 8 was harmless and, at worst, "sloppy" drafting.[2]

The Court finds, as it must, that the response to Interrogatory No. 8 was neither truthful nor accurate.  The correct manner of response under the circumstances as they existed in March 2011 would have been to acknowledge an unidentified person's participation in testing and then to object to production of the report on the basis of work product privilege and/or that the time for disclosure of Rule 26 expert witnesses had not yet arrived.  Such a response would have

_____

[2] A transcript of the December 14, 2011 hearing has not been filed; however, defense counsel used this term in his argument to justify the incorrect answer provided to Interrogatory No. 8.

5

alerted Plaintiff to fact that Defendant had employed an expert who had performed testing on the accused toothbrush.  Again, though, the key is whether the withholding of that information unfairly prejudiced or harmed Plaintiff.

At the outset, the court notes that in the Scheduling Order [Doc. No. 18], filed September 21, 2010, Defendant disclosed that it intended to retain the following experts: "(a) Technical expert to rebut Plaintiff's infringement contentions, (b) Damages expert to rebut Plaintiff's claim for damages, (c) Other experts as needed." *Id.* at ¶ 8(e)(1).  In March 2011, then, Plaintiff was already on notice that Defendant intended to retain a technical expert who might well perform testing in the attempt to rebut Plaintiff's infringement contentions.  Therefore, the information that Defendant had indeed retained such an expert for the purpose of rebutting the infringement contentions could have little, if any, impact on Plaintiff's plan to prosecute his case.

In support of his argument that Defendant's untruthful answer should be met with significant penalties, in spite of the fact that little prejudice has come to Plaintiff as a result, Dr. Asher argues that Defendant's willful and deceitful behavior must be severely punished nonetheless to thwart discovery misconduct by litigants in federal court.  In support of this argument at the hearing, Plaintiff presented the court with a one-page document that Plaintiff characterized as the same table, albeit with certain changes, as a table attached to Dr. Putt's expert report that was eventually provided to Plaintiff in compliance with Fed. R. Civ. P. 26(a)(2).[3]  Plaintiff stated that the Independent Table had been faxed to him shortly before

---

[3] For ease of reference, this Table will be referred to as the "Independent Table."   The Table which was actually attached to Dr. Putt's Report will be referenced as the "Report Table."

Plaintiff was to take Defendant's Fed. R. Civ. P. 30(b)(6) deposition as part of a multi-page production of discovery. The Independent Table is entitled "Table" followed by the heading "Percentage Stain Reduction After Treatment." (*See,* Minutes of December 14, 2011 hearing [Doc. No. 97], Ex. 97-1, dated March 15, 2011.) Plaintiff alleges that the Independent Table arrived buried in a group of unrelated discovery without attribution to the author of the document. During the hearing, the court noted that the Independent Table was not an exact duplicate of the Report Table. (See Mot., Ex. E at 9, Dr. Putt's Expert Report.) The Report Table is entitled "Table 4" followed by the heading "Percentage Reduction in Total Available Extrinsic Stain After Treatment." The data contained in both Tables is identical, however the Report Table does not contain the Independent Table's notation in the lower right following the footnotes, "11CPC-L25, 3/15/2011." This court agrees with Plaintiff that evidence of willful redaction of a report received by Defendant from Dr. Putt in March 2011 prior to production to Plaintiff could indicate bad faith.

Defendant, however, offers evidence that the Independent Table provided as part of Defendant's supplemental disclosures was not simply copied from Dr. Putt's final report and thereafter altered prior to production to Plaintiff. (Supp.Resp., Ex. D.) Instead, it appears from Exhibit D that Dr. Putt himself sent the Independent Table as a stand-alone document to Defendant's in-house counsel on March 15, 2011 via an email transmission. *Id.* Dr. Putt sought in the email, through reference to the Independent Table contained as an email attachment, to justify his conclusion that "the data indicate that the two products [one toothbrush without the accused member and one toothbrush containing the accused infringing item] removed similar

7

amounts of extrinsic stain, and the differences between the products were not statistically significant." (*Id.*) Thereafter, defense counsel states they simply produced the Independent Table which Dr. Putt had originally emailed to in-house counsel, to Plaintiff. In other words, Defendants allege they have been in possession of two separate tables, both provided to them by Dr. Putt, and that they faithfully reproduced each of the Tables, one independently in July 2011 and one as attached to Dr. Putt's full report provided under Fed. R. Civ. P. 26(a)(2). The difference in the implied *mens rea* of Defendant and its counsel between production of a willful alteration of part of an expert's report versus production of an isolated data collection sent to in-house counsel independent of any report is manifest in this context—one shows willful intent to mislead while the other shows good faith attempts to comply with discovery obligations.

Notwithstanding Defendant's benign explanation for existence of the Independent Table and its production to Plaintiff, Plaintiff continues to argue for sanctions, alleging that the failure to produce the whole Putt report in March of 2011 and to acknowledge that additional expert testing had been accomplished prejudiced him because

> during the five (5) months [between the untruthful response regarding testing and the disclosure of the full Putt report] the parties deposed several witnesses during which the testing would have played an integral part of the examination. One of these witnesses, Joseph Hohlbein, was the designated Rule 30(b)(6) witness regarding testing.

Reply at 3.[4]

---

[4] To the extent Defendant argues that production of the Independent Table put Plaintiff on notice of testing done on the Max White toothbrush in March 2011 (the date included on the Independent Table), the court disagrees. To so hold would reward a litigant for burying an unidentified document amid other discovery and then later feign surprise that the other party did not recognize the proverbial needle in the discovery haystack. However, given the lack of

Plaintiff asserts that if Interrogatory No. 8 had been truthfully answered, he could have petitioned the court for release of the report, and, if granted, that production would have significantly influenced his conduct of certain depositions.  (Reply at 3.)  There is no cogent reason, however, for Plaintiff to legitimately believe that, had Defendant properly asserted the work product privilege after disclosing that testing been undertaken by an independent, non-testifying expert, Plaintiff would have been entitled to Dr. Putt's report before Defendant designated Dr. Putt as a testifying expert.  Further, expert disclosure by the parties was not required until September 19, 2011.  (*See* Minute Order [Doc. No. 41].)  In this case, as in most other civil litigation, litigants usually go through the majority of fact discovery and depositions long before the experts are disclosed on either side.  The court finds, therefore, that no prejudice befell Plaintiff as a result of not receiving information that Defendant had hired an expert whose report was in final form approximately five months before the court-ordered deadline for such disclosures.

Further, it is not refuted that the actual conclusions reached by Dr. Putt are largely favorable to Defendant, not to Plaintiff.[5]  (Resp. at 4-5.)  All told, the court can find no apparent prejudice to Plaintiff from Defendant's failure to correctly answer Interrogatory No. 8; in fact, Defendant's mistake has actually been detrimental to Defendant, due to the additional attorney's

---

obligation on the part of Defendant in this case to actually produce the expert report in March, 2011, this point is ancillary to the analysis herein.

[5] Plaintiff maintained at the hearing that Dr. Putt's report is susceptible to challenge, however this happenstance is not abnormal in a patent case; to the contrary, it would be rare if opposing sides did not challenge the findings and opinions of an opponent's expert witnesses.

fees necessary to respond to the allegations of bad faith failure to disclose and the risk of having

its expert barred from rendering favorable testimony.

"While Rule 37(c)(1) is written in mandatory terms with respect to findings supporting

the exclusionary aspects concerning withheld discovery, it also vests the court with discretion to

impose 'other appropriate sanctions' in addition to, or in lieu of, an order striking witnesses for

evidence not properly disclosed." *Sender v. Mann,* 225 F.R.D. 645, 655 (D. Colo. 2004) (citing

*Woodworker's*, 170 F.3d at 993 [recognizing that Rule 37(c) vests broad discretion with the trial

court]); *Outback Steak House of Florida, Inc.*, 2008 WL 3992172 at *6.

Pursuant to Rule 37, then, the court finds that Defendant provided Plaintiff with a false

answer to a relevant and appropriate question about testing which had been done or was in the

process of being done on the Max White toothbrush.  Defendant failed at all times to

affirmatively correct the false answer, even when it filed its supplemental responses.[6]  The

failure to properly use the available discovery tools, such as a privilege log, to answer the

interrogatory truthfully and still maintain and protect the privilege, was not substantially

justified.

On the whole, however, the court must conclude that the blunder was harmless in this context.

Therefore, the court finds that the mandatory provisions of Rule 37 are inapplicable and the court

will not strike Dr. Putt's testimony or his report on this basis.

---

[6] The supplemental response added an objection based on privilege but unfortunately did
not correct the false representation concerning the lack of testing of the accused product.

10

The court is acutely aware, however, that Defendant is not the only party who has been forced to incur additional attorneys fees as a result of the incorrect discovery response. Plaintiff has been put to considerable expense to bring the matter to the court's attention. Given the way the Independent Table was produced, it is understandable that Plaintiff would infer an pernicious intent when confronted with the inaccurate discovery response and the apparently altered portion of Dr. Putt's report, discovered only after the report was produced in connection with identification of Dr. Putt as a testifying expert. Although the court accepts Defendant's explanation concerning the two Dr. Putt tables, Plaintiff should not be obligated to bear the burden of litigation concerning an error which was caused and created by Defendant's initial error. Pursuant to Fed. R. Civ. P. 37(c)(1)(A), "[i]n addition to or instead of [striking the testimony of the witness], the court, on motion and after giving an opportunity to be heard: "(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure . . . ."

It is therefore **ORDERED**

1.      "Plaintiff's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37" [Doc. No. 75] is GRANTED in part and DENIED in part as follows:

a.      Defendant shall pay all attorneys fees and costs incurred by Plaintiff in investigating and bringing forth the issue of Defendant's incorrect response to Interrogatory No. 8, including the drafting of court pleadings and review of discovery as well as appearing in Court to argue the motion and prepare the supplemental response. Further Defendant shall bear the

costs of Plaintiff's filing of an itemized accounting of the attorney's fees and other costs as

awarded herein;

        b.      The motion is denied in all other respects.

    2.      Plaintiff shall file his attorney's fees and costs accounting on or before January

12, 2012.

    Dated this 30th day of December, 2011.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge