**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 10-cv-01468-MSK-KMT

**RANDALL S. ASHER,**

  **Plaintiff,**

v.

**COLGATE-PALMOLIVE COMPANY,**

  **Defendant.**

_____

**OPINION AND ORDER CONSTRUING PATENT,
GRANTING MOTION FOR SUMMARY JUDGMENT, AND
DENYING MOTION TO RESTRICT ACCESS**
_____

  **THIS MATTER** comes before the Court pursuant to the Defendant's ("Colgate") Motion for Summary Judgment **(# 79, 82)**, Dr. Asher's response **(# 93, 94)**, and Colgate's reply **(# 108)**; and Colgate's Motion to Restrict Access **(# 81)** to its summary judgment motion and several exhibits.

**FACTS**

  The Court briefly summarizes the relevant facts here, and elaborates as necessary in its analysis. Dr. Asher is the owner of United States Patent No. 5,735,011, which describes a toothbrush in which tufts of conventional bristles surround one or more "plaque removing members," which consist of "a relatively soft elastomeric [*i.e.* rubber] material and particles of

1

an abrasive material."[1]  He contends that Colgate infringed that patent with its "Max White" toothbrush.  The Max White toothbrush's salient feature is a "polishing star," which Colgate describes as consisting of a rubber member impregnated with a small amount of "titanium dioxide pigment to make it white," and that the titanium dioxide particles "serve as a whitening colorant."  Dr. Asher asserts a single claim for patent infringement.

Colgate moves **(# 79, 82)** for summary judgment on Dr. Asher's claim, arguing: (I) with regard to the patent's language requiring that the toothbrush include "particles of abrasive material," Dr. Asher cannot show that Colgate's toothbrush contains such material; (ii) Colgate is entitled to judgment on its affirmative defense of anticipation, in that U.S. Patent No. 5,987,688 (the "Roberts patent"), U.S. Patent No. 5,628,082 (the "Moskovitch patent"), and/or U.S. Patent No. 301,644 (the "Thompson patent") contain all of the pertinent elements of each of the contested claims in Dr. Asher's patent; and (iii) Dr. Asher's patent is invalid on grounds of obviousness.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs

---

[1]Consistent with the Scheduling Order issued by the Magistrate Judge, the parties subsequently filed claim construction briefs **(# 32, 33, 37, 49)**, but never filed a formal motion affirmatively requesting relief in the form of claim construction from the Court.  Nevertheless, the Court has considered the claim construction briefs to the extent the bear on the issues raised in the motion for summary judgment.

what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  See Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a prima facie

claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Colgate's summary judgment motion

#### 1. Evidence that Colgate's toothbrush contains "abrasive material"

Colgate's first contends that Dr. Asher cannot come forward with sufficient evidence to demonstrate that Colgate's challenged toothbrush contains "abrasive material." As the Court understands it, Colgate is not contending that titanium dioxide, by its nature, is not "abrasive" in the appropriate context. Rather, Colgate is arguing that the **quantity** of titanium dioxide (or other materials) found in the polishing star is insufficient to have any **abrasive effect**.

This brings the Court one of the issues on which the parties seek claim construction. Specifically, they have briefed the question of whether the patent's term "particles of abrasive material" means "material that has the potential to abrade, even if not found in quantities sufficient to produce any abrasive effect" (as Dr. Asher contends), or whether it means "material that has the potential to abrade, in sufficient quantities to produce an abrasive effect" (as Colgate contends). The Court will thus endeavor to construe the disputed language before turning to the merits of Colgate's summary judgment motion.

The fundamental purpose of a patent is to give notice to others of that in which the inventor claims exclusive rights. *Oakley Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). Thus, the focus of claim construction is ascertaining how a reasonable competitor would interpret the actual claim language, not what the inventor subjectively intended the language to claim. *Id.* at 1340-41. The words used in the patent are evaluated to

their "ordinary and customary meaning," as would be understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*). In some circumstances, the specification may reveal that the inventor specifically – albeit idiosyncratically – defined a term in a way that might differ from the meaning it would otherwise possess. Where the intrinsic record <u>clearly</u> discloses that the inventor resorted to his or her own peculiar lexicography, the Court will give effect to the inventor's unique idiom; however, where the inventor used particular words without giving a clear indication of an intent to endow them with an unusual meaning, the Court will give those words their ordinary and customary meaning, notwithstanding the inventor's subjective intent to invoke a different definition. *See e.g. Laryngeal Mask Co. v Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010).

In attempting to give meaning to the inventor's language, the Court "looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips,* 415 F.3d at 1314. Among those sources are: (I) the words of the claims themselves; (ii) the remainder of the patent's specification; (iii) the prosecution history of the patent; (iv) extrinsic evidence concerning relevant scientific principles; (v) the common meanings of technical terms used; and (vi) the state of the art at the time of the invention. *Id.* Terms must be construed in light of the entirety of the patent, not just in the context of the particular claim(s) they appear in. *Id.* at 1313. In other words, claim language must be read in conjunction with the more general and descriptive specification portion of the patent; indeed, the specification is often "the single best guide to the meaning of a disputed term." *Id.* at 1315. Because the patent is examined as a whole, the Court assumes that

claim terms will normally be used consistently throughout the patent, and thus, the meaning of a term used in one claim can illustrate the meaning of that same term used elsewhere in the patent. *Id.* at 1314.

Here, the Court finds that Dr. Asher's use of the phrase "particles of abrasive material," as illuminated by the entirety of the patent, would be understood by a reasonable practitioner in the art to mean the presence of a material in sufficient quantities and disposition as to have an abrasive effect when used with a wiping action.

The phrase "abrasive material" is a component of a device described as a "plaque removing member," the obvious purpose of which is to remove plaque. The description of the invention explains that the rubber projections of the plaque removing member "provide a wiping action on each tooth that **combines** with the abrasive particles to disrupt the plaque on each tooth." (Emphasis added.) Describing particles as abrasive might only relate to their potential - that they are of a substance that could abrade. But by describing an effect - disrupting the plaque - that requires the combination of wiping with abrasive materials, both must be essential to abrade. Thus the abrasive materials must be both of appropriate nature and of sufficient quantity to combine with the wiping action to disrupt the plaque. Put another way, if there is some abrasive material in the member, but the amount is not sufficient to contribute to the effect, the plaque disruption would not be the result of a "combination" of wiping action and abrasion; it would be only the result of the wiping action. Thus, the language of the patent indicates that Dr. Asher intended to claim a device in which the abrasive material had some abrasive effect.[2] In

---

[2] The Court draws some guidance from *Okor v. Atari Games Corp.*, 76 Fed.Appx. 327, 329-30 (Fed. Cir. 2003) (unpublished). There, the court agreed that a patent for a video game system that included a limitation concerning "changeable memory" was informed by the

this sense, the Court finds that Dr. Asher has acted as his own lexicographer, implicitly disavowing in the specification the notion that the abrasive material can be so minimal that it, alone, has no effect. Moreover, the Court is required to avoid a construction that would render a claim limitation to be "functionally meaningless." *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (court should avoid a construction that "renders an important claim limitation . . . functionally meaningless").

Dr. Asher argues that requiring a particular abrasive effect is akin to requiring a certain quantity of abrasive material in the rubber member, and that because certain of his dependent claims (*e.g.* claims 4, 6, 16, and 17) dictate a specific ratio of rubber to abrasive material, Colgate's construction violates the doctrine of claim differentiation. *Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1275 (Fed. Cir. 2012) (doctrine of claim differentiation is that "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim"). But a construction requiring the abrasive material to produce **some** abrasive effect is conceptually-distinct from a requirement that the abrasive material produce a **specific** abrasive effect resulting from a specific ratio of ingredients. Here, for example, dependent claims contemplate a ratio of 10 parts rubber to 1 part abrasive material. Dr. Asher has not contended that this ratio is the minimum (or only) possible way of achieving any abrasive effect, such that requiring abrasive effect would be the equivalent

---

specification, which recited the benefits of "easy interchangability of programs." The Federal Circuit rejected the inventor's argument that imposing a requirement that changing programs be "eas[y]" impermissibly incorporated a limitation from the specification into the claim language. It explained that "the term 'changeable' standing alone is opaque" and that "in some senses, all memory devices can be 'changed, but if [the limitation] embraced all memory devices it would be meaningless." Thus, it affirmed the trial court's decision to look to the specification for guidance.

of requiring that particular ratio to be implemented. Indeed, the specification section discusses that the ratios set forth in those dependent claims are "preferable" when using a process by which the abrasive material is uniformly distributed throughout the rubber member, but notes that "it may be possible to embed fewer quantities of the particles of the abrasive material into the outer surface portions of the plaque removing member that contacts the teeth and gums of the user while retaining the benefit of the mixture." Thus, it is entirely possible to apply an effect-based construction of the phrase "particles of abrasive material" without running afoul of the doctrine of claim differentiation.

Accordingly, the Court finds that the proper construction of the phrase "particles of abrasive material" is "particles of an abrasive material, in sufficient quantities and disposition within the rubber member as to have an abrasive effect on the user's teeth or gums." The Court declines to attempt to further quantify the abrasive effect that must result. Whether the patent language would require a "significant" or "material" or "discernable" abrasive effect or even a "minimal" or "nominal" one is not a question that this Court must address in order to resolve the issues before it.

Having thus construed the phrase "particles of abrasive material," the Court turns to the question of whether Dr. Asher has come forward with sufficient evidence that Colgate's use of titanium dioxide (or other allegedly abrasive materials) in the polishing star of the Max White toothbrush can have such effect. The Court finds that Dr. Asher has not pointed to any evidence that would establish that the polishing star has **any** abrasive effect.

Dr. Asher first relies on the expert report of Dr. Joel Self, who analyzed the components

of a sample of the polishing star.[3] Dr. Self concluded that the polishing star was primarily a silicone rubber, with trace amounts of "oxides of titanium, calcium, and silicon." He concluded that these substances were "potentially abrasive," and testified in his deposition that the substance "could be abrasive," but when asked what more he would need to know before he could declare that the substances would indeed have an abrasive effect, he stated that he would have to perform "abrasion testing." It is conceded that neither Dr. Self nor anyone else performed such additional testing. Dr. Self testified that, in the abstract, these substances would be abrasives, but he was not asked, and did not opine, that the concentration of those substances as found in the polishing star would be sufficient to produce an abrasive effect on teeth or gums.

Similarly, Dr. Asher has designated himself as an expert in this case and points to his own testimony. He was asked whether a product that used a rubber member that had titanium dioxide added to it as a colorant would do a better job at removing plaque than one that did not use a colorant, to which Dr. Asher responded "I expect it to have more [of] an abrasive effect." But he conceded that he had not performed any testing to confirm that expectation. (Instead, he relied upon Colgate's own promotional materials that suggested that the polishing star "polished," which Dr. Asher says "implies an abrasive effect.")

Dr. Asher has come forth with evidence that might establish that fact, but before the Court considers that evidence, it must first address Colgate's contention that the evidence is not properly before the Court. The evidence in question is a rebuttal expert report by Sheldon

---

[3]Colgate raises certain objections to Dr. Self's methodology, but never moved for a determination of the admissibility of Dr. Self's opinions under Fed. R. Evid. 702. The deadline for filing such motions as set forth in the Court's Trial Preparation Order **(# 19)** has passed. Thus, the Court treats any Rule 702 objections by either party as waived.

Newman, and Colgate contends that the report was not timely disclosed. The Scheduling Order (# 18) in this case initially set deadlines for expert disclosure. Dr. Asher's designation of his affirmative experts and tender accompanying reports under Fed. R. Civ. P. 26(a)(2)(A) and (B) was required to be completed by July 15, 2011; rebuttal expert designations and tender of reports was to be complete by August 15, 2011, and expert discovery as a whole (*e.g.* expert depositions) was required to be complete by September 15, 2011. In a May 28, 2011 Minute Order (# 31), the magistrate Judge extended the deadline for designating affirmative experts to August 5, 2011, the deadline for rebuttal experts to September 5, 2011, and the deadline for completing expert discovery to October 6, 2011. It is unclear when Dr. Asher may have notified Colgate of its designation of Dr. Newman as a rebuttal[4] expert, but the record discloses that Dr. Asher did not supply Colgate with Dr. Newman's expert report until October 6, 2011.[5]

By all appearances, Dr. Asher's disclosure of Dr. Newman's rebuttal report was untimely. As modified, the Scheduling Order required that "the parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P.

---

[4]The Court has some doubt that Dr. Newman is properly considered to be a "rebuttal" expert, rather than one who supports Dr. Asher's affirmative case. Dr. Newman's report generally explains principles of abrasion (as that concept is taught to dentists), the relative hardness of teeth, plaque, and the minerals at issue here, and various other factual principles. It mentions the report of Colgate's expert, to whom it is purportedly "rebutting," only insofar as stating that Colgate's expert also used the same estimates of titanium dioxide particle sizes, then concludes that particles of that size are "definitely abrasive." Dr. Newman also acknowledges that Colgate's expert "identifies concentration [of the titanium dioxide particles] as factor in the abrasivity of the material." Dr. Newman does not dispute that "the extent of abrasion can be affected" by particle size, but that "does not negate the fact that [titanium dioxide] is an abrasive." Thus, Dr. Newman's response does not "solely contradict or rebut" Colgate's expert's contentions, Fed. R. Civ. P. 26(a)(2)(D)(ii), but rather, largely exists to simply reassert Dr. Asher's affirmative position on the issue of whether the polishing star was abrasive.

[5]Dr. Newman's report is dated October 5, 2011.

26(a)(2)" by the September 5, 2011 deadline.  Rule 26(a)(2) has two pertinent requirements: (I) "a party must disclose . . . the identity of any witness it may use," Fed. R. Civ. P. 26(a)(2)(A); and (ii) that disclosure "must be accompanied by a written report – prepared and signed by the witness . . .," Fed. R. Civ. P. 26(a)(2)(B).  Thus, the Scheduling Order unambiguously required that Dr. Asher disclose both the identity of Dr. Newman and Dr. Newman's report by September 5, 2011.  Dr. Asher's disclosure of that report on October 5, 2011 was thus untimely by a full month.

Fed. R. Civ. P. 37(c) provides that, where a party has failed to make the disclosures required under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion . . .unless the failure was substantially justified or is harmless."  The party who failed to make the disclosure – here, Dr. Asher – bears the burden of showing that the untimely disclosure was justified or harmless.  *Umbenhower v. Copart, Inc.*, 222 F.R.D. 672, 675 (D. Kan. 2004); *Hirpa v. IHC Hospitals, Inc.*, 149 F.Supp.2d 1289, 1295 (D. Ut. 2001).

Colgate's original summary judgment motion raised (albeit briefly) the question of the timeliness of Dr. Newman's disclosure, expressly contending that "Dr. Newman's report is untimely." *Docket* # 79 at n. 6.  Dr. Asher's response did not address the timeliness of Dr. Newman's report or otherwise asset any facts that would show that the late disclosure was either justified or harmless.  However, Dr. Asher did significantly urge consideration of Dr. Newman's report on its merits.  Colgate thus addressed the issue in slightly more detail in its reply, again urging that the Court "should therefore refuse to consider" it.  *Docket* # 108 at n. 4.  Thereafter, Dr. Asher never requested leave to file a sur-reply addressing the admissibility of Dr. Newman's opinions or otherwise addressed Colgate's contention that the disclosure of Dr. Newman was

11

untimely.

Accordingly, the Court finds that Colgate promptly and conspicuously raised the untimeliness of Dr. Newman's disclosure, objecting to the Court's consideration of Dr. Newman's report for purposes of summary judgment and making a *prima facie* showing that the disclosure was untimely under Rule 26(a)(2)(B). Dr. Asher did not respond to that argument, either defending the timeliness of the disclosure or showing cause why the Court should nevertheless consider the report. In the absence of such a response, the Court finds merit in Colgate's contention and refuses to consider Dr. Newman's report pursuant to Fed. R. Civ. P. 37(c)(1).

Without the assistance of Dr. Newman's report, Dr. Asher has failed to come forward with evidence sufficient to demonstrate that Colgate's polishing star has any actual abrasive effect. Both Dr. Self and Dr. Asher's testimony merely establish that titanium dioxide **could** have an abrasive effect in some abstract sense, but neither can affirmatively state that, in the concentration and configuration in use in the polishing star, it **actually** has such effect. Thus, Dr. Asher has failed to come forward with sufficient evidence to demonstrate a genuine issue of fact as to whether Colgate's toothbrush infringes the "particles of abrasive material" limitation that appears in every claim, and Colgate is therefore entitled to summary judgment on Dr. Asher's sole claim of infringement.

Because the Court disposes of Dr. Asher's sole claim on this ground, it does not reach Colgate's argument that Dr. Asher's patent is invalid due to anticipation or obviousness.

### C. Motion to Restrict Access

Colgate moves **(# 81)** to restrict public access to its summary judgment motion, as well as

three supporting exhibits, A-9, A-10, and A-17.[6] The operative portion of the motion consists of two sentences: "The exhibits at issue are materials containing or referencing confidential information designated Highly Confidential under the protective order, including expert reports. The brief at issue contains numerous quotations from these confidential documents as well as discussion of their contentions." The three exhibits referenced are: (I) the rebuttal report of Colgate's expert, Dr. Rooney, which primarily disputes Dr. Asher and Dr. Self's reports that the quantity of titanium dioxide in the polishing star can have an abrasive effect (and which report includes certain exhibits appearing to be lab analyses or formulas for certain products); (ii) Dr. Rooney's original expert report (which is primarily devoted to argument on issues of anticipation or obviousness); and (iii) a five-page excerpt of the transcript of the deposition of Douglas Hohlbein, a Colgate employee, primarily devoted to discussing an the fact that an efficacy test was conducted on the Max White toothbrush (although the excerpt does not address the results of that test), the fact that Colgate "would not use abrasive in our toothbrushes" because of the risk of damage to its manufacturing equipment, and some discussion about the properties of titanium dioxide.[7]

---

[6]After Dr. Asher filed his response **(# 94)** to Colgate's motion, Colgate moved **(# 101)** to have that response filed under restricted access as well, based on the same reasoning. The Magistrate Judge granted **(# 106)** Colgate's motion, restricting access to the documents "unless or until further order of the court," but without making any particular factual findings as to the relative public and private interests at issue. It is this Court's intention that, in the absence of circumstances warranting a differential, both the motion and response be subject to the same restriction (or lack thereof), and thus, this Court's denial of Colgate's motion to restrict access to the summary judgment motion constitutes a "further order of the Court" lifting any restriction on access to Dr. Asher's response as well.

[7]A longer excerpt of Dr. Hohlbein's deposition, including the pages referenced above, is attached to Dr. Asher's response. That excerpt elaborates somewhat on the testing of the Max White toothbrush as well as offers a discussion of its invention.

The Supreme Court acknowledged a common-law right of access to judicial records in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but public access may be restricted when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be restricted. *See Nixon,* 435 U.S at 599. Nevertheless, the public interest is particularly significant where the materials for which restriction are sought are fundamental to the Court's decisionmaking process, as it is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter. *McVeigh*, 119 F.3d at 814.

D.C. Colo. L. Civ. R. 7.2 embodies these principles, requiring that a party seeking to restrict public access to a document filed in a case show that the privacy interest in the document "outweighs the presumption of public access," along with a showing of a "clearly defined and serious injury" that would result if access is not restricted and a showing that "no alternative to restricted access [such as redaction, summarization, stipulation, etc.] is practicable." Local Rule 7.2(B)(2)-(4). The rule expressly provides that, in demonstrating that a privacy interest outweighs the public interest, "stipulations between the parties or stipulated protective orders

with regard to discovery, alone, are insufficient to justify restricted access." Local Rule 7.2(B)(2).

Colgate's motion offers nothing more than the fact that the parties have agreed between themselves that certain documents are "highly confidential" under the terms of a stipulated protective order. This is precisely the type of showing that Local Rule 7.2(B)(2) deems insufficient. Moreover, Colgate's motion does not attempt to make the showings required by the other provisions of Local Rule 7.2(B)(2)-(4), discussed above. Accordingly, Colgate's motion is denied.

Notwithstanding Colgate's failure to even facially comply with Local Rule 7.2, the Court will nevertheless briefly consider whether a colorable argument could be made for retaining some or all of the documents at issue under restricted access. Having reviewed all of the materials that Colgate's motion seeks to restrict, as well as the entirety of Dr. Asher's response and supporting exhibits, the current restriction on which would be lifted by this Court's Order, the Court has located only a handful of pages of information that could even arguably be considered so confidential that the private interest in non-disclosure of them begins to approach the public interest in access to judicial records. Those pages are the exhibits to Dr. Rooney's rebuttal report that, among other things, disclose the formulation of certain products that Colgate produces. The Court can readily anticipate that Colgate claims an interest in seeking to keep those formulations private, and the Court finds that there is relatively little public interest in accessing them because they are utterly irrelevant to the issues presented to and decided by the Court here. *See Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752, 755 (10th Cir. 2009) (unpublished) (public has only a weak interest in access to documents that court did not

consider).  Thus, the Court deems it appropriate to maintain restricted access to Docket # 79, Exhibit A-9, pages 19-24.

There is less justification for restricting access to the substantive portion of Dr. Rooney's rebuttal report, as that report does not describe the product formulas in such detail that Colgate would be likely to be injured by public disclosure.  Dr. Rooney discusses the products themselves only in general terms or with references to composition that are not particularly precise.  Similarly, whatever privacy interest Colgate might claim in materials such as Dr. Hohlbein's deposition testimony (regarding the testing of the Max White toothbrush), that information is presented at such an abstract and generalized level that the Court cannot discern any meaningful injury that would befall Colgate were the information to be made publicly accessible.  And, of course, the public interest in access to the actual briefs that the parties have filed with regard to this action is particularly high, given the public's right to review the materials that this Court actually considers and evaluates in the course of its rulings.  The Court sees nothing in those briefs that is so sufficiently specific and potentially damaging to Colgate that would overcome the presumption of public access.

Accordingly, the Court will lift the restrictions currently in place with regard to Docket # 79 and 93, with the exception of pages 19-24 of Exhibit A-9 to Docket # 79, for which there is an adequate demonstration that those pages justify a level 1 restriction under Local Rule 7.2.  To facilitate the lifting of access restrictions on all documents except the pages listed above, the Court will direct that the Clerk of the Court continue to maintain Exhibit A-9 to Docket # 79 under its current restriction, but lift the restrictions on the remaining components of Docket # 79. to vindicate the public interest in access to Exhibit A-9, Colgate shall immediately file, without

any restrictions, a redacted version of Exhibit A-9 to Docket # 79 which omits pages 19-24 of that document.

## CONCLUSION

For the foregoing reasons, the Court construes the term "particles of abrasive material" in Dr. Asher's patent as set forth herein. Upon that construction, the Court **GRANTS** Colgate's Motion for Summary Judgment **(# 79, 82)**. The Clerk of the Court shall enter judgment in favor of Colgate and against Dr. Asher on all claims herein. Colgate's Motion to Restrict Access **(# 81)** is **GRANTED IN PART AND DENIED IN PART**. The Clerk of the Court shall lift all access restrictions on the main document in Docket # 79, as well as on the exhibits to that entry designated as A-10 and A-17; however, the exhibit denoted as A-9 shall remain under a level 1 restriction. The Clerk of the Court shall lift all restrictions on all components of Docket # 93. Colgate shall immediately publicly-file a redacted version of Exhibit A-9, as set forth above within 14 days.

Dated this 12th day of September, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge